_JjAMY, Judge.
The plaintiff brought actions against two defendants seeking recovery for conversion and negligence. After a bench trial, the trial court denied both claims. For the following reasons, we affirm.
Factual and Procedural Background
This dispute concerns money which was transferred between different accounts at First Federal Savings and Loan in Sul- *886 phur, Louisiana. Jonathan Sheridon, the plaintiff, opened two Access 90 savings accounts with First Federal on December 22, 1998, using a $9,800.00 check. This check was dated December 20, 1998, and listed the following names on the checking account: “EDWARD OR CATHERINE RICHARD” and “DIANE M. SHERI-DON.” Diane Sheridon was married to Mr. Sheridon at this time, and the checking account was also a First Federal account. On September 29, 1999, the Access 90 accounts, listed under the Mr. Sheri-don’s name, totaled $10,148.00; however, on this date, these funds were transferred back into the checking account of Edward or Catherine Richard and Diane Sheridon. As a result, Mr. Sheridon brought a cause of action against Diane Sheridon and First Federal, alleging conversion and negligence.
At a bench trial, Diane Sheridon testified that the funds in the First Federal checking account belonged to her mother, Catherine Richard. Her father, Edward Richard, was deceased. Since Mrs. Richard was suffering from several illnesses, including Alzheimer’s, Parkinson’s, and vascular dementia, she resided in a nursing home, and Ms. Sheridon was granted power of attorney by Mrs. Richard to attend to her mother’s financial affairs. Ms. Sheridon further testified that the $9,800.00 check provided to Mr. Sheridon was not intended to be a gift. Rather, Ms. Sheridon explained that, at a family meeting over the 1998 Thanksgiving holidays, the family ^discussed reorganizing her mother’s money. Due to this conversation, Ms. Sheridon stated that checks in the amount of $9,800.00 were distributed to the children of Mrs. Richard and their spouses.
Cliff Gallagher, Ms. Sheridon’s brother, testified that both he and his wife, Eva Stubits, also received $9,800.00 checks and stated that these checks were not intended to be gifts. Consistent with the testimony of Ms. Sheridon, Mr. Gallagher said that he and his wife took these checks with the understanding that they were to invest the money on his mother’s behalf. Mr. Gallagher explained that the amounts of the checks were intentionally under $10,000.00 to avoid attention being drawn to the money transfers. Also, Mr. Gallagher said that the money was not reinvested in Mrs. Richard’s name because the children wanted to ensure that nothing could be taken from their mother due to her declining mental health. Lastly, Mr. Gallagher confirmed that rebanee on the individual children or in-laws with this money would be based on trust to come forward and take care of Mrs. Richard.
Addressing the date of the alleged conversion, Ms. Sheridon testified that she began to experience difficulties in her marriage to Mr. Sheridon. Since Ms. Sheri-don believed that her marriage would end soon, she stated that she approached Mr. Sheridon on the morning of September 29, 1999, with a type-written document authorizing the transfer of the funds from the Access 90 accounts back to Mrs. Richard’s cheeking account. But, Ms. Sheridon stated that Mr. Sheridon tore the document by pressing a pen too hard to the document while signing. Ms. Sheridon said that she responded by simply handwriting another transfer authorization and that | aMr. Sheri-don signed it.[1] Thereafter, Ms. Sheridon *887 stated that she went to the First Federal branch in Sulphur, Louisiana.
Pam Whiteard, the vice-president and manager of the First Federal Sulphur branch, testified that, under the terms and conditions of the account contract, only Mr. Sheridon, as owner of the account, was authorized to perform withdraws or transfers. However, Ms. Whiteard also testified that the contract does not address by what fashion an owner of an account may conduct a withdrawal or transfer. Ms. Whiteard stated that withdrawals and transfers are governed by internal procedures and that an owner may conduct a withdrawal or transfer by telephone or written authorization. In addition, Ms. Whiteard testified that she spoke to both Mr. and Ms. Sheridon during the day of September 29, 1999. First, Mr. Sheridon visited the Sulphur office complaining that confidential information had been given to Ms. Sheridon.[2] Next, Ms. Sheridon arrived several hours later requesting that the funds in the Access 90 accounts be transferred to the checking account of Mrs. Richard. When she arrived at the Sulphur branch, Ms. Sheridon had a handwritten authorization to transfer the funds in the Access 90 accounts and a folder with the Access 90 account information. Ms. Whiteard said that the signature on the transfer authorization was the signature Lof Mr. Sheridon. Additionally, Ms. Whi-teard advised that she also confirmed the transfer authorization by telephone.
Jonathan Sheridon testified that, although Mrs. Richard was not present when he received the check, it was his impression that the $9,800.00 check was a gift. Mr. Sheridon also denied that anyone was authorized to transfer money from the Access 90 accounts. He specifically denied signing the document authorizing the transfer of funds and speaking with Ms. Whiteard about the transfer. Nevertheless, the trial court denied both of Mr. Sheridon’s claims.
The trial court provided the following oral reasons for denying the claim against First Federal:
In addressing first the issue of First Federal, it is ... noted that defendant, First Federal acknowledges that as far as they were concerned Mr. Sheridon was the owner of those funds. The Court notes that as far as this action to transfer those funds, the bank or savings and loan, First Federal, either way has no interest in whether the funds were transferred or not transferred. The question therefore is inasmuch as they don’t have any interest were whether or not they complied with then-own standards. The Court specifically looks on page three of exhibit J-2, the terms and conditions of a savings account. The specific language indicates the owner is allowed to make withdrawals or transfers from the account only. The Court disagrees with the plaintiffs interpretation that this means only a personal appearance would in effect be the owner making the transfer. It is not that another individual use their name or attempted to make the transfer in another name other than the owner.
The bank clearly indicated that they have an administrative or internal procedure, if they verify that the action is ordered by the owner, that they will in *888 fact comply therewith. In this situation a written note bearing what appeared to be the signature of the owner of the account, that signature being in conformity with the signature cards of record. And, finally, upon following up with a telephone conference with the defendant with the plaintiff which was confirmed by Ms. Whiteard, and the Court finding it impressive that she had no hesitation in recognizing Mr. Sheri-don’s voice based on the uncontested testimony that he in fact did appear at some point earlier in the day at the facility, and was in fact upset and was very irate over dissemination of information concerning his accounts.
Ut is the Court’s position that as far as First Federal is concerned at this time they did not violate any terms of their agreement, and, in fact, acted in conformity therewith, and therefore did not convert. Therefore, as far as the burden of proof and the allegations made against the defendant, First Federal, judgment is granted in favor of the defendant, First Federal, as to those allegations of conversion brought by Mr. Sheridon.
Mr. Sheridon now appeals, presenting the following issue:
Whether the trial court erred in interpreting the contract between First Federal and Jonathan Sheridon, the owner of the Access 90 Accounts, when the trial court found an administrative or internal procedure allowing the transfer of funds without the owner being present even though the contract did not specifically allow this kind of transfer?
Discussion

Standard of Review

A trial court’s finding of fact cannot be set aside by an appellate court in the absence of manifest error or unless it is clearly wrong. Stobart v. DOTD, 617 So.2d 880 (1993). Further, in Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989), the Louisiana Supreme Court stated:
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact finders’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
| Conversion
In his brief, Mr. Sheridon asserts that First Federal allowed the withdrawal of funds from his Access 90 accounts without proper authorization. Mr. Sheridon additionally alleges that First Federal’s actions were not in compliance with the terms and conditions of their own contract dealing with the Access 90 accounts. Due to this alleged, unauthorized withdrawal and First Federal’s refusal to return the money to Mr. Sheridon, he contends that he is entitled to recover for conversion. We disagree.
Initially, we note that a conversion action “is grounded on the unlawful *889 interference with the ownership or possession of a movable.” Dual Drilling Co. v. Mills Equipment Investments, Inc., 98-343, p. 5 (La.12/1/98); 721 So.2d 853, 857. In other words, “[a] conversion consists of an act in derogation of the plaintiffs pos-sessory rights, and any wrongful exercise or assumption of authority over another’s goods, depriving him of the possession, permanently or for an indefinite time, is a conversion.” Labbe v. Premier Bank, 618 So.2d 45, 46 (La.App. 3 Cir.1993). We also note that Mr. Sheridon’s brief specifically states that he is not appealing the trial court’s denial of his claim against Diane Sheridon. Yet, we cannot determine whether Mr. Sheridon’s appeal has merit without addressing the trial court’s findings concerning Ms. Sheridon because Mr. Sheridon must demonstrate some ownership or possessory rights to the funds at issue.
When denying the claim against Ms. Sheridon, the trial court stated, in pertinent part:
Now, for Mr. Sheridon’s benefit, I think it was established that he was at home very seldom, and in fact was not part of the initial — or may or may not have been part of the family — but giving him the benefit of the doubt, the Court is of the opinion that at best, due to his job and being consistently away, that he may have been under a misunderstanding as to what the true intent of what those funds were to 17be. The Court is more impressed with Mr. Gallagher, the brother of the defendant, Diane Sheri-don, who appeared to be competent in business, rationally explained his actions, and was creditable in expressing the family’s intent, indicating that the, for lack of a better term, financial deceptions, were to be done by the family and the in-laws to benefit the mother, of which the Court accepts as being rational in order to divest the funds with the minimum consequences to loved ones that could be relied upon, and yet protect the mother’s interest from potential seizure or devastating financial burdens that may have occurred to her.
The Court is cognizant that in dealing with matters of trust, as was being done in this situation, many potential problems could occur in order to establish the true intent or true ownership of the dollars. It is this Court’s position based, as indicated, on the totality, that the true owners of the funds was in fact Mrs. Richard, and that those funds were systematically divested to various heirs and in-laws solely for the purpose of being available for later use based on nothing more than trust without any legal documentation to be in place.
Therefore, the Court will rule that the ownership of those funds never divested themselves from Mrs. Richard.[3] The Court does acknowledge that a Donation Inter Vivos such as this generally has to be where the donor will divest themselves irrevocably, of which Mrs. Richard was not a part of this, but due to her medical condition we look to the agent who had the Power of Attorney. The *890 case law as indicated by defendants herein, Diane Sheridon, does indicate there must be an express power to donate; and the Court has reviewed the Power of Attorney, and while the exact words “donate” are not included, the Court does not take the position that the Power of Attorney as indicated was a general Power of Attorney, and in fact contains the words that it was unconditionally — that is was given to her with unconditional discretion.
... [B]ased on the reasons stated herein, specifically the totality of the evidence and the credibility appraisals that were made by the Court, the Court finds that the defendant herein, Diane Sheri-don, recovered funds that did belong to her mother that had been previously placed in Mr. | sJonathan Sheridon’s name. Therefore, there is no conversion based on the ownership being determined belonging to Mrs. Richard; and the plaintiffs claims against Ms. Diane Sheridon is [sic] also denied and judgment will be - granted in favor of Ms. Sheridon on behalf of Mrs. Richard denying any type of recovery or conversion. ...
(Footnote added.) Consequently, in light of the trial court’s finding that the funds at issue were owned by Mrs. Richard, Mr. Sheridon has not established that he is entitled to recover in this case.
Furthermore, even assuming Mr. Sheri-don owned the funds at issue, the trial court’s findings regarding First Federal’s actions are not clearly wrong or manifestly erroneous. The trial court found that First Federal was presented a hand-written transfer authorization bearing the signature of Mr. Sheridon. The trial court also found that, in accordance with the bank’s administrative or internal procedures, First Federal will perform an action ordered by the owner after verification; and, the trial court found that Ms. Whi-teard verified the transfer order by speaking with Mr. Sheridon by telephone. Although the account contract provides that only the owner of the account is allowed to make a transfer or withdrawal, the contract does not address by what fashion the owner may perform a transfer or withdrawal. As such, we find no error in the trial court’s determination that the contract does not require the owner to appear in person to perform such an action. The contract only requires that the owner give the transfer order. Accordingly, the trial court did not err when it denied Mr. Sheri-don’s claims against First Federal.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assigned to the plaintiff-appellant, Jonathan Sheridon.
AFFIRMED.

. The hand-written note admitted into evidence reads as follows:
To First Federal Savings & Loan
I Jonathan E. Sheridon authorize my wife Diane M. Sheridon to close Access 90 accounts #50402780-10 and 50402781-10 and to be deposited into the account of Catherine Richard Acct # 250002755-01.
*887 9-29-99
[printed] Jonathan E. Sheridon [signed] Jonathan E. Sheridon

. Shellie Theriot, a lending officer with First Federal, also testified that Mr. Sheridon, complaining about his wife receiving confidential information, visited the Sulphur branch of First Federal on the morning of September 29, 1999.

. "A donation inter vivos (between living persons) is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it.” La.Civ.Code art. 1468. “The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality.” La.Civ.Code art. 1539. “To establish a donation inter vivos of a manual gift, the donee has the burden of proving by strong and convincing evidence donative intent of the donor.” Mertens v. Mertens, 96-391, p. 3 (La.App. 3 Cir. 10/9/96); 688 So.2d 1148, 1150, writ denied, 96-2716 (La.1/6/97); 685 So.2d 123. "Donative intent is a factual issue and is subject to the manifest error/clearly wrong standard of appellate review.” Id. atp. 4; at 1150.